IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


BRIMSTONE NATURAL RESOURCES
CO., an Oregon corporation; JOHN WEST, an
individual; ROBERT STUMBO, an
individual

Case No. 1:18-cv-01740-CL

**OPINION & ORDER**

Plaintiffs,
v.

DAVID HAIGHT, an individual; STEPHEN
WETMORE, individually and in his official
capacity; DOUGLAS THACKERY,
individually and in his official capacity;
OREGON DEPARTMENT OF
FORESTRY, a government agency; PETER
DAUGHERTY, State Forester, Oregon
Department of Forestry, in his official capacity;
OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY, a
government agency; RICHARD WHITMAN,

Director of the Oregon Department of
Environmental Quality, in his official capacity;
OREGON DEPARTMENT OF FISH AND
WILDLIFE, a government agency; CURT
MELCHER, Director of the Oregon
Department of Fish and Wildlife, in his official
capacity; DOES 1-10, individually and/or in
their official capacities.

Defendants.

---

CLARKE, Magistrate Judge.

Plaintiffs Brimstone Natural Resources Co., John West, and Robert Stumbo request

declaratory relief for preemption, void for vagueness, contract rights, substantive and procedural

due process, and equal protection issues. Second Am. Compl. ¶¶ 1-7 (#26). Additionally,

Plaintiffs request monetary relief for alleged procedural due process and equal protection

violations, each claim alleging one million dollars in damages. *Id.* ¶¶ VIII-IX. Plaintiffs also

allege an unconstitutional taking without just compensation and seek one million dollars in

damages. *Id.* ¶¶ 6; VII. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

because the asserted claims include a federal question arising under 42 U.S.C. § 1983.

This matter comes before the Court on a Motion to Dismiss (#29) filed by Defendants

David Haight, Stephen Wetmore, Douglas Thackery, Curt Melcher, Peter Daugherty, Richard

Whitman, the Oregon Department of Forestry, the Oregon Department of Environmental

Quality, and the Oregon Department of Fish and Wildlife ("Defendants"). For the reasons below,

Defendants' motion is GRANTED. Defendants have also filed a Motion for Judicial Notice

(#30). Plaintiffs do not contest the motion, and it is GRANTED. The parties have entered full

consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a motion to dismiss, the court may first identify and strike allegations that are mere legal conclusions. *Id.* However, the court must accept allegations of fact as true and construe those allegations in the light most favorable to the non-moving party. *Id.*; *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citations omitted).

In general, a court cannot consider any material outside the pleadings when ruling on a motion to dismiss unless the motion is treated as one for summary judgment and the parties are "given reasonable opportunity to present all materials made pertinent to such motion by Rule 56." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting Fed. R. Civ. P. 12(b)(6)). However, there are two exceptions to this rule. *Id.*

First, a court is not required to convert a motion to dismiss into a motion for summary judgment if it is merely considering "material which is properly submitted as part of the complaint." *Id.* (internal citations omitted). Such materials may include documents specifically referred to and relied upon in the complaint, so long as the authenticity of the documents is uncontested. *Id.* Second, a court may take judicial notice of "matters of public record" under Federal Rule of Evidence 201. *Id.* at 689 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.3d 1279, 1282 (9th Cir. 1986)). Rule 201 enables the court to take judicial notice of facts that are "not subject to reasonable dispute" because they are (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For instance, a court may take judicial notice of records and reports of administrative bodies. *See Anderson v. Holder*, 673 F.3d 1089 (9th Cir. 2012) (taking judicial notice of second appeal and merging it with earlier appeal).

## BACKGROUND

Plaintiffs John West and Robert Stumbo are fifty percent shareholders of Plaintiff Brimstone Natural Resources Co. ("BNR"), an Oregon corporation that owns property located along Dog Creek ("Dog Creek Property") and Brimstone Road ("Brimstone Property") in Josephine County, Oregon. Second Am. Compl. ¶¶ 13-15, 28-29 (#26). Only the Brimstone Property appears to be at issue in this case. As alleged, the Brimstone Property originates in a land patent issued in 1883 under the authority of the 1820 Land Act and supplemental legislation. *Id.* ¶ 33. Plaintiffs believe there is gold on the property and intend to conduct a mining operation to retrieve it. *Id.* ¶¶ 27, 38.

In order to conduct their gold mining operation as they envisioned it, Plaintiffs harvested several trees in the riparian management area of the Brimstone Property during the summer of

2013. Ex. 101 at 7 (#30); *see* Second Am. Compl. ¶ 72 (#26). They sold this timber commercially in violation of the Oregon Forest Practices Act (OFPA). Ex. 101 at 7 (#30); OAR 629-600-0050. In response to public complaints about the timber harvest, the Oregon Department of Forestry (ODF) investigated the property in September 2013. Ex. 101 at 8 (#30). ODF Forester, Stephen Wetmore, found Plaintiffs had removed several trees in the riparian management zone of the property. *Id.* Defendant Wetmore issued citations (#13-SW022, #13-SW023, and #13-SW024; "2013 Repair Orders") requiring Plaintiffs to cease further harvesting operations and repair damage by replanting and maintaining new trees on the property. Ex. 101 at 9-10 (#30); Second Am. Compl. ¶ 69 (#26). Plaintiffs requested an administrative hearing to contest the citations. *See* Ex. 101 at 3 (#30).

An administrative hearing was held on November 21, 2013. Ex. 101 at 3 (#30). The Administrative Law Judge ("ALJ") concluded that Plaintiffs had failed to retain trees in the riparian management zone in violation of the OFPA. Ex. 101 at 13 (#30). The ALJ also considered and ultimately rejected Plaintiffs' argument that the Mining Act of 1872 ("The Mining Act"), 30 U.S.C. §§ 22-54, and the federal mining patent for Brimstone Property preempted the OFPA, Ex. 101 at 17-20 (#30). The ALJ issued a Final Order affirming citations #13-SW023 and #13-SW024, which required Plaintiffs to cease further violation and repair damages on the land by replanting approximately 500 trees and maintaining them for four years. Ex. 101 at 11-12, 25 (#30) (#13-SW022 was not at issue in this hearing). According to the administrative record, Plaintiffs have not yet complied with the Repair Order. Ex. 103 at 2 (#30).

During the November hearing, defendant Wetmore also indicated that Plaintiffs could avoid some of the 2013 Repair Order requirements if they submitted and gained approval for a Plan for Alternate Practice ("PFAP"). Second Am. Compl. ¶ 71 (#26); Ex. 102 at 11 (#30); OAR

629-605-0173. Although the OFPA's purpose is to preserve forestland properties such as the Brimstone Property, 44 ORS § 527.630, the legislation allows for the possible conversion of forestland to other uses through the PFAP process, 44 ORS § 527.730; OAR 629-605-0173. PFAPs are commonly approved to convert forestland to agricultural uses; however, before this case, ODF staff had not encountered a PFAP application for converting forestland to mining purposes. Ex. 102 at 11 (#30).

Plaintiffs allege that, in reliance on Mr. Wetmore's statements, they abandoned their appeal of the 2013 Repair Orders and pursued a PFAP. Second Am. Compl. ¶ 71 (#26). Plaintiffs met with Mr. Wetmore in May 2014, at which time Mr. Wetmore encouraged them to show reasonable progress toward conversion of the property by submitting a written PFAP application. *Id.* ¶ 84; Ex. 102 at 11 (#30). Despite this meeting, Plaintiffs did not submit a written PFAP application until November 2014, more than twelve months after they learned of this option. Ex. 102 at 11 (#30). Plaintiffs have not yet been approved for a PFAP and allege they were informed the application had expired on March 6, 2015, Second Am. Compl. ¶ 95 (#26), and on December 31, 2015, *id.* ¶ 91.

At a subsequent hearing regarding all three citations, the ALJ issued a civil penalty of $4,950 against Plaintiffs. Ex. 102 at 14 (#30). In January 2016, Defendant ODF issued an order prohibiting further commercial timber operations by Plaintiffs until the fines were paid and either reforestation occurred or a PFAP was approved ("Order to Prohibit"). Ex. 103 at 2 (#30). In response, Plaintiffs commenced this action, alleging that Defendants abused their authority in order to prevent Plaintiffs from acting on their plans to mine. Second Am. Compl. ¶¶ 100-104 (#26). Plaintiffs also allege that Defendants fabricated impossible and variable requirements to

obtain approval for a PFAP and, in doing so, have limited the use of Plaintiffs' property to forestland. *Id.*

## DISCUSSION

Plaintiffs contend the following: (1) The OFPA, as applied in this case, is preempted by federal mining laws, Second Am. Compl. ¶ 118 (#26); (2) Defendants' actions have infringed upon a heretofore unrecognized "fundamental property right" of individuals "to use and develop their property as they choose" in violation of the 14th Amendment, *id.* ¶¶ 123-26; (3) the OFPA, as applied in this case, is void for vagueness and thus unconstitutional, *id.* ¶ 132; (4) Defendants' actions have infringed on Plaintiffs' right to freedom of contract in violation of Article I § 10 of the Constitution, *id.* ¶ 137; (5) Defendants have violated Plaintiffs' 5th and 14th Amendment rights to due process rights by "depriving Plaintiffs of their constitutionally protected property rights and providing no reasonable notice or opportunity to be heard," *id.* ¶¶ 143-43; (6) Defendants violated the Equal Protection Clause of the 14th Amendment by "singling Plaintiffs out for intentional and arbitrary discrimination, [sic] because of personal animus toward Plaintiffs," *id.* ¶¶ 146-47; and (7) Defendants' actions constitute an "as applied" taking in violation of 42 USC § 1983, *id.* ¶ 153. Furthermore, Plaintiffs allege that defendants Thackery, Haight, Wetmore, and Does 1-10 have, in their individual capacities, violated Plaintiffs' procedural due process and equal protection rights. *Id.* ¶¶ 156, 161.

As a preliminary matter, Plaintiffs have not alleged that they have exhausted all administrative remedies. The doctrine of exhaustion of administrative remedies "provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. U.S.*, 395 U.S. 185, 193 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). "The basic purpose of the

doctrine of exhaustion of administrative remedies is to allow an administrative agency to perform functions within its special competence to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies." *Aleknagek Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1980). "If a statute does not provide for exhaustion of administrative remedies, a district court may require exhaustion in the exercise of its discretion." *Porter v. Board of Trustees of Manhattan Beach Unified School Dist.*, 307 F.3d 1064, 1070 (9th Cir. 2002).

Though exhaustion of administrative remedies is typically required as a condition of judicial review, courts have allowed exceptions when exhaustion does not serve the purposes of the doctrine or the particular administrative scheme involved. *Andrus*, 648 F.2d at 499. Thus, exhaustion is not required in the following circumstances: (1) if the prescribed administrative remedies are "inadequate or not efficacious," (2) if "pursuit of administrative remedies would be a futile gesture," (3) if "irreparable injury will occur" without immediate judicial review, or (4) if an administrative proceeding would be void. *Id.*

It is not disputed in this case that Plaintiffs have failed to exhaust the available administrative remedies. First, as alleged in the complaint, Plaintiffs had the option to appeal the 2013 Repair Order, but they abandoned their appeal to pursue a PFAP. Second, according to the administrative record, Plaintiffs had the opportunity to request a hearing regarding the 2016 Order to Prohibit within 30 days of its issuance, Ex. 103 at 2 (#30), but Plaintiffs have not alleged that they did so. Furthermore, Plaintiffs have not alleged any of the aforementioned exceptions to the doctrine of exhaustion of administrative remedies.

This Court exercises its discretion to require exhaustion of administrative remedies in this case. Therefore, since Plaintiffs do not contend that they have exhausted all prescribed

administrative remedies, Plaintiffs' Complaint does not properly allege entitlement to the requested relief. Moreover, as discussed below, Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## I.    The OFPA is not preempted by the Mining Act.

Plaintiffs allege that the OFPA, as applied through the Order to Prohibit, conflicts with the Mining Act and is thus preempted by federal law. Conflict preemption arises where a state law "actually conflicts with federal law [such that] it is impossible to comply with both state and federal law . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 582 (1987) ("*Granite Rock*").

### a.    Federal mining laws do not preempt a state's reasonable environmental regulations.

To allege preemption, Plaintiffs rely on the Mining Act, which provides:

> [A]ll valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States....

30 U.S.C. § 22. As passed in 1872, the Mining Act "expressed no legislative intent on the as-yet rarely contemplated subject of environmental regulation." *Granite Rock*, 480 U.S. at 582.

The United States Supreme Court has held that federal mining laws and environmental regulations do not preempt reasonable state environmental laws that restrict mining activities on federal land.[1] *Id.* In *Granite Rock*, the state law at issue was a permitting

---

[1] In Plaintiffs' Response to Defendants' Motion to Dismiss (#33), Plaintiffs attempt to distinguish the present case from *Granite Rock*, claiming that the Supreme Court's holding in that case applied only to unpatented claims on federal land. However, if the Mining Act applies to the Brimstone Property, then *Granite Rock* also applies. If *Granite Rock* does not apply, the Mining Act does not apply, and preemption would be impossible. In either scenario, this claim should be dismissed.

regulation that required a mining company, which had already submitted an approved five-year plan of operations to the Forest Service, to secure a permit from the California Coastal Commission before undertaking any development, including mining. *Id.* at 577. The mining company immediately filed an action alleging that the permit requirement was preempted by federal regulations. *Id.* The Court held the Mining Act and other federal Forest Service mining regulations were not intended to preempt the imposition of reasonable state environmental regulations on mining claims. *Id.* at 583. Moreover, the regulations "expressly contemplate coincident compliance with state law as well as with federal law." *Id.* at 584.

As discussed below, the OFPA is a reasonable environmental regulation. Moreover, the OFPA does not preclude mining, either facially or as applied through the Order to Prohibit. Therefore, under *Granite Rock*, federal mining laws do not preempt the OFPA, and Plaintiffs' preemption claim is not cognizable.

### b. The Oregon Forest Practices Act (OFPA) is not facially preempted because it is reasonable state environmental regulation.

Although the Mining Act is silent on the subject of environmental regulation, Congress has since recognized that both federal and state governments have a responsibility and a right to minimize adverse environmental impacts through reasonable environmental policies. 30 U.S.C. § 601 *et seq.*; 36 C.F.R. §§ 228 .1, 228.3(d); 42 U.S.C. §§ 4331(a), 4371(b)(2). Pursuant to this right, the state of Oregon enacted the Forest Practices Act, which sets forth various forest regulations to achieve Oregon's declared policy

> to encourage economically efficient forest practices that ensure the ... maintenance of forestland ... consistent with sound management of soil, air, water, fish and wildlife resources and scenic resources ... and to ensure the continuous benefits of those resources for future generations of Oregonians.

44 ORS § 527.630.

Not only does the OFPA have a clear environmental purpose, the subsequent regulations promulgated by Oregon's Department of Forestry are also tailored to that purpose. *Bohmker v Oregon*, 903 F.3d 1029, 1044 (9th Cir. 2018) (noting Oregon Senate Bill 3 was environmental regulation, not land use planning, for the same reasons). To encourage the maintenance of forest resources, the OFPA requires that private owners of "forestland" comply with state permitting requirements before conducting any commercial operation relating to the "establishment, management, or harvest" of forest tree species, including the Douglas Fir and Ponderosa Pine. 44 ORS §§ 527.620(12); 527.670(6)-(7). Additionally, the Board of Forestry established specific riparian protections for operations occurring near streams. OAR 629-640-0100. These regulations are in place to ensure the maintenance and protection of Oregon's natural resources, not to prohibit any land use planning schemes, including those for mining uses.

Because the OFPA is not intended to "prevent the conversion of forestland to any other use," 44 ORS § 527.730, forestland owners who wish to conduct commercial operations that are not contemplated in the OFPA have the opportunity to propose a Plan for Alternative Practice to the Department of Forestry, OAR 629-605-0173. This plan must be approved by the State Forester before the operation commences. *Id.* at (5). If a forestland owner fails to submit or comply with a PFAP, or otherwise violates the OFPA, the State Forester has the authority to issue citations; order owners to make reasonable efforts to repair the damage; and prohibit owners from conducting new operations on any forestland until repairs, fines, and other conditions are resolved. 44 ORS § 527.680.

For these reasons, the OFPA is a reasonable environmental regulation. Additionally, the OFPA does not ban mining, nor does it mandate particular uses of the land. To the extent that the OFPA, as here, regulates commercial lumber harvesting activities in areas sought to be mined,

the OFPA indirectly affects mining. However, in intent and in effect, the OFPA does not preclude Plaintiffs from mining. Plaintiffs' mining rights—whatever they may be—remain intact, albeit within the constraints of Oregon's regulatory scheme. Therefore, the OFPA is not facially preempted by the Mining Act.

### c. The OFPA, as applied through the Order to Prohibit, does not preclude mining.

As discussed above, the OFPA, is a reasonable environmental regulation that is not facially preempted. Likewise, the OFPA, as applied through the Order to Prohibit, does not preclude Plaintiffs from mining. First, the text of the Order to Prohibit says nothing about mining. Rather, the Order to Prohibit merely prevents Plaintiffs from conducting any new "operation" until reforestation is complete and all penalties are paid. The OFPA defines an "operation" as any "commercial activity relating to the establishment, management, or harvest of forest tree species." 44 ORS § 527.620(12). Thus, the text of the Order requires only that Plaintiffs replant the felled trees and pay a fine before engaging in another commercial timber harvest.

Moreover, the Order to Prohibit does not preclude mining. Plaintiffs are free to mine their property in any manner they choose, so long as they comply with all relevant state regulations, including the OFPA and the Order to Prohibit. *See Bohmker*, 903 F.3d at 1045-51 (holding that a state ban on suction dredge mining was not federally preempted because it did not ban all mining). As alleged in the complaint, Plaintiffs violated the OFPA when they sold the timber they removed from the planned mining area. Plaintiffs were ordered to pay a fine and reforest the area, and they were unable to enact their original mining plan. However, though Plaintiffs are no longer able to mine in the manner they originally intended, they are not banned from mining altogether. For instance, assuming no other regulations or orders would be violated, Plaintiffs

could pan for gold in the river or shaft mine. Mining is not prohibited; rather, mining in a manner

that fails to comply with Oregon's regulatory system is prohibited. Since Plaintiffs may still

mine their land, the OFPA, as applied through the Order to Prohibit, does not conflict with the

Mining Act. Therefore, Plaintiffs have failed to state a cognizable preemption claim.

## II. Plaintiffs' remaining claims are dismissed for failure to state a cognizable claim for relief.

### a. Plaintiffs' substantive due process claim for recognition of a new "fundamental property right" is not cognizable.

Plaintiffs have requested this Court to create a new "fundamental property right,"

protected by the Fourteenth Amendment's Due Process Clause. This Court declines to do so.

Under the Supreme Court's substantive due process precedent, to be considered a fundamental

right, an asserted right must be "deeply rooted in this Nation's history and tradition" and

"implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721

(1997). Furthermore, the Supreme Court has required a "careful description of the asserted

right." *Reno v. Flores* 507 U.S. 292, 302 (1993).

Plaintiffs describe their asserted right as "the fundamental freedom of persons to the

private enjoyment and use of their property." Second Am. Compl. ¶ 123 (#26). They allege "that

government regulation of such property must be narrowly tailored to achieve a compelling

governmental interest." *Id.* Never in the history of Fourteenth Amendment jurisprudence or

Ninth Circuit precedent has such a "fundamental property right" been recognized. Furthermore,

Plaintiffs' description of the asserted right is vague, broad, and far from "careful." Even if this

Court were inclined to vastly expand the scope of substantive due process, the asserted right, as

alleged in Plaintiffs' complaint, cannot pass the Supreme Court's test. Therefore, Plaintiffs have

failed to state a cognizable claim for a new "fundamental property right."

### b. Plaintiffs' void for vagueness claim is not a cognizable constitutional challenge to the OFPA.

Plaintiffs' "void for vagueness" claim is not cognizable because Plaintiffs cannot demonstrate that the statute as applied is unconstitutionally vague. The void for vagueness doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). "An enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Additionally, the Supreme Court has stated that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).

Even as alleged in the complaint, the conduct for which Plaintiffs were originally cited—commercial timber harvesting in an area designated as "forestland"—was clearly proscribed by the OFPA. Moreover, the fact that the Brimstone Property was protected under the OFPA was established in a final administrative proceeding and cannot now be denied. Because a binding state agency proceeding conclusively established that the OFPA applies to Plaintiffs' conduct, Plaintiffs cannot successfully challenge the OFPA for vagueness.

Additionally, Plaintiffs are not required to apply for a PFAP; they are allowed to do so. OAR 629-610-0090(3). Since the OFPA does not mandate a PFAP, Plaintiffs do not face any civil or criminal penalties as a result of their failure to obtain one. The PFAP requirements thus do not amount to any "prohibition" that can be challenged under the void for vagueness doctrine. In other words, the permissive statutory scheme that allows individuals to apply for a PFAP cannot be void for vagueness. Therefore, Plaintiffs' void for vagueness claim is not a cognizable constitutional challenge to the OFPA.

### c. Plaintiffs' Contracts Clause claim is not cognizable.

Plaintiffs have failed to state a legally cognizable claim under Article I § 10 of the

Constitution, which limits the power of states to pass laws "impairing the Obligation of

Contracts." As a prerequisite for a successful claim under the Contracts Clause, a plaintiff must

show more than the general existence of a contractual relationship between parties; rather, he

must show the parties entered a contractual agreement regarding the specific impairment being

alleged. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).

Here, Plaintiffs allege the Department of Forestry has "prevent[ed] Plaintiffs from

mining" with an Order to Prohibit and a "sham change of use process." Second Am. Compl. ¶

137 (#26). However, Plaintiffs allege no facts supporting the existence of a contractual

agreement to mine on the land. Instead, they allege only that the property at issue originates

under a federal land patent. *Id.* ¶¶ 33-34. Furthermore, the impairment alleged by Plaintiffs was

previously adjudicated in state administrative hearings, which determined that the OFPA did not

expressly prohibit Plaintiffs from mining, only from conducting the operation as they envisioned

it. Because Plaintiffs have not alleged sufficient facts to support a cognizable claim of

contractual impairment, this claim is dismissed.

### d. Plaintiffs fail to state a procedural due process claim.

Plaintiffs' procedural due process claim alleges that Defendants created a "sham" PFAP

application process that deprived Plaintiffs of their mining rights without notice or opportunity to

be heard. To establish a procedural due process violation, a plaintiff must demonstrate the

deprivation of a protected liberty or property interest without adequate procedural safeguards.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Determining what constitutes "adequate

procedural safeguards" requires consideration of the following factors: "First, the private interest

that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Plaintiffs' claim, as alleged, fails because the procedural safeguards afforded to Plaintiffs were adequate according to the *Matthews* test. First, the "private interest" allegedly being affected is Plaintiffs' mining rights. As discussed above, the facts as alleged do not show that the Plaintiffs are being deprived of their mining rights because they still have the ability to mine their property. Second, even if the Plaintiffs were being deprived of their mining rights, the risk of an "erroneous deprivation" of this interest is low. As alleged, Plaintiffs received administrative hearings as requested and an appeals process was available to contest the administrative rulings. Second Am. Compl. ¶ 71 (#26). Additionally, because Plaintiffs abandoned their appeal of the 2013 Repair Order and the Order to Prohibit, there would be minimal value, if any, to having "additional" safeguards. Second Am. Compl. ¶ 71 (#26). Finally, the government has a strong interest in ensuring that forestland under its control is maintained according to lawful environmental regulation and would be burdened by the fiscal cost of providing additional safeguards. Thus, the procedural safeguards were adequate, and Plaintiffs failed to state a cognizable procedural due process claim.

### e. Plaintiffs fail to state a cognizable equal protection claim.

Plaintiffs' also allege that Defendants singled them out for intentional and arbitrary discrimination in violation the Equal Protection Clause of the Fifth and Fourteenth Amendments. "[T]he first step in equal protection analysis is to identify the state's classification of groups."

*Country Classic Dairies, Inc. v. Milk Control Bureau,* 847 F.2d 593, 596 (9th Cir. 1988). "[T]he groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens,* 425 F.3d 1158, 1167 (9th Cir. 2005). An equal protection claim can also lie where a plaintiff can establish that he is a "class of one" in that he has been intentionally treated differently than others similarly situated, and there is no rational basis for the difference in treatment. *Hood Canal Sand and Gravel, LLC v. Brady,* 129 F.Supp.3d 1118, 1125 (9th Cir. 2015).

In this case, Plaintiffs have not alleged any action taken against them based on their membership in any class or group. Additionally, Plaintiffs have not sufficiently alleged that they have been treated differently than others similarly situated, i.e. others who attempted to change the use of a property from forestland to mining. It is unclear to this Court if there has ever been a PFAP granted for a change of use from forestland to mining. ODF staff have "never seen an alternate practice plan requested for mining." Ex. 102 at 37 (#30). Therefore, as alleged, Plaintiffs failed to state a cognizable equal protection claim.

### f. Plaintiffs fail to state a cognizable takings claim.

Finally, Plaintiffs allege that Defendants' actions constitute a physical taking of their property and seek just compensation under the Takings Clause of the Fifth Amendment, as applied through the Fourteenth Amendment. Second Am. Compl. ¶¶ 150-153 (#26). To state a claim for a physical taking requiring just compensation, a plaintiff must make a threshold allegation that the government "[required] the landowner to submit to the physical occupation of his land," *Yee v. City of Escondido, Cal.,* 503 U.S. 519 (1992). A plaintiff cannot establish a physical takings claim simply by alleging he has been "denied the ability to exploit a property

interest that [he] heretofore had believed was available for development . . . ." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 105, 130 (1978).

In this case, Plaintiffs have failed to state a legally cognizable claim for the physical taking of their property. They allege no facts showing Defendants required the physical occupation of their land. Moreover, their allegations that Defendants' actions "prevent Plaintiffs' intended legal use" and "frustrated Plaintiffs' expectations in purchasing the properties" are insufficient to support a physical takings claim. Second Am. Compl. ¶¶ 151-152 (#26). Because Plaintiffs have not stated a cognizable takings claim, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted. The Court cannot say with absolute certainty that amendment of these claims would be futile. However, the deficiencies are significant, especially considering Plaintiffs' failure to exhaust administrative remedies. In an abundance of caution, the Court dismisses Plaintiffs' Complaint (#26) without prejudice. Regarding the recently filed Motion for Extension of Time (#47), Plaintiffs have not shown good cause for this Court to delay ruling on Defendant's Motion to Dismiss (#29). Pursuant to Federal Rule Civil Procedure 15, Plaintiffs may address any new events or allegations in an amended complaint if one is filed.

## ORDER

For the reasons stated above, the Defendants' Motion to Dismiss (#29) is GRANTED. This case is dismissed without prejudice, with leave to amend within 30 days. Defendants' unopposed Motion for Judicial Notice (#30) is also GRANTED. Plaintiffs' Motion for Extension of Time (#47) is DENIED.

IT IS SO ORDERED.

DATED this ___ day of August, 2019.

_____
MARK D. CLARKE
United States Magistrate Judge